ISABELLA L. ORTON ET AL., PROSECUTORS, v. THE BOR-
OUGH OF METUCHEN AND RARITAN TRACTION COM-
PANY.

Argued February Term, 1901—Decided June 10, 1901.

1. Where an ordinance authorizing a traction company to construct an electric street railway was passed October 29th, 1900, and accepted by the company November 8th, 1900, and amended March 4th, 1901, which amendment was accepted by the company between the 1st and 15th of April, 1901, and the company had not actually commenced the construction of the road, a writ of *certiorari* to review the ordinance allowed April 29th, 1901, will not be dismissed for laches.

2. The ordinance will be set aside, it appearing that the company did not obtain proper consents from the owners of one-half in amount of lineal feet of property fronting on the highway, as required by the statute. *Pamph. L.* 1896, *p.* 330.

3. A consent of an abutting owner, executed by the owner, the execution thereof not being acknowledged, but proved by the subscribing witness, is invalid, the statute (*Pamph. L.* 1896, *p.* 330) requiring that the consent "shall be executed and acknowledged as are deeds entitled to be recorded."

4. Where by a will the testator gives to his wife during her natural life all his estate, and at her death gives said estate to his sons in fee, the said estate to be sold by his executors and the proceeds divided among the children, the consent of such executors, during the life estate of the widow, to the construction of a street railway, is invalid, the act of 1896 authorizing only executors holding the legal title or those having power of sale to consent.

5. The consent of one of four tenants in common to the construction of a street railway, does not satisfy the requirements of the statute that the owners shall consent.

On *certiorari.*

Before Justices VAN SYCKEL, FORT and GARRETSON.

For the prosecutors, *Alan H. Strong.*

For the defendant the borough of Metuchen, *George S. Silzer* and *Richard V. Lindabury.*

For the defendant the Raritan Traction Company, *Charles L. Corbin.*

PER CURIAM.

.The *certiorari* brings up an ordinance of the borough grant-ing permission to the traction company to construct, maintain and operate an electric street railway upon a certain street or road in the borough.

The defendants ask that the writ be dismissed for laches.

The ordinance was passed October 29th, 1900, and was accepted by the company November 8th, 1900. On the 4th of March, 1901, the ordinance was amended, making a change in the rail to be used, which amendment was accepted by the company between the 1st and 15th of April, 1901. The writ of *certiorari* was allowed April 29th, 1901. By the original ordinance the company was to pay the borough $1,500 for the privileges granted, and by the amended ordinance the company was to pay an additional sum of $230. The $1,500 was paid in November, 1900, and the $230 in April, 1901. These sums were to be returned to the company in case it failed to lay its tracks within eighteen months from the date of the acceptance of the ordinance. Some poles, rails and ties were piled along the street, but no actual construction commenced in the borough prior to the allowance of the writ.

Under these circumstances there was not such delay on the part of the prosecutors in applying for the writ as to justify the court, on that ground, in dismissing it.

The ordinance, however, will be set aside, because it appears that the company did not obtain proper consents from the owners of one-half in amount of lineal feet of property front-ing on the highway, as required by the statute. *Pamph. L.* 1896, *p.* 330.

The length of the road upon which permission was given to construct, maintain and operate a railroad was, on the north side, three thousand three hundred and seventy-five feet, on the south side three thousand three hundred and forty feet, making in all six thousand seven hundred and fifteen feet; deducting therefrom the width of four intersecting streets, for which it is assumed no property owners' consent was required, aggregating two hundred and twenty-two feet, leaves six thou-sand four hundred and ninety-three feet, one-half of which is three thousand two hundred and forty-six and one-half feet,

for which consents should be obtained. It is claimed that consents were obtained for three thousand three hundred and fifty-one feet, or one hundred and four and one-half feet more than one-half.

Frederick R. Coudert was the owner of one thousand five hundred and eighteen feet of the three thousand three hundred and fifty-one feet for which consent was given. This consent was executed by the owner, but the execution thereof was not acknowledged, but proved, by the subscribing witness. The act requires (*Pamph. L.* 1896, *p.* 330) that the consent "shall be executed and acknowledged as are deeds entitled to be recorded." Because of the failure to have this consent acknowledged, as required by law, it was invalid, and the requisite one-half was not obtained.

The consent of the executors of Freeman Edgar for one hundred and twelve feet is also claimed to be invalid, because the executors did not hold the legal title and had not then any power of sale. And the act providing for consents authorizes only the "executor holding the legal title or having power of sale" to consent. *Pamph. L.* 1896, *p.* 330. The will of Freeman Edgar gives to his wife during her natural life the use, income and proceeds of all his estate, real, personal and mixed, and at her death gives said estate to his four sons in fee; "said estate, real, personal and mixed, to be sold by the hereinafter named executors of this will and the proceeds thereof equally divided among the aforesaid four children." Under this language of the will of Freeman Edgar the executors did not, at the time of giving the consent, hold the legal title to, or have power of sale over, the lands in question. The invalidity of this consent would reduce the frontage consenting, if all other consents were valid, below the requisite one-half.

The consent of Daniel Pierson for two hundred and fifty feet was the consent of one of four tenants in common. This we do not think satisfies the requirement of the statute that the owners shall consent. This also takes away more than enough to reduce the consenting frontage below one-half, if all the other consents were valid.

The ordinance will be set aside.